O’CONNELL, Justice.
In this petition for certiorari the employer and carrier contend that the Full' Commission erred in overruling that part of the order of the deputy commissioner wherein he found that the claimant, when hired by the employer, suffered from a “permanent physical impairment”, to-wit: diabetes mellitus, which disease when merged with the compensable accident caused the claimant to be permanently partially disabled in his legs, and ordered the Special Disability Fund, hereinafter referred to as the Fund, to reimburse the employer and carrier for the sums paid by *306 them to the claimant for his disability due to the accident. The rights of the claimant, Camiel Grymonprez, are not involved in this cause.
The claimant, a cabinetmaker, for some fifteen years prior to the accident here involved, had suffered from diabetes mellitus. This fact was known to the employer when claimant was hired for the services he was performing at the time of the accident. In addition to diabetes claimant was afflicted with varicose veins and other ailments not claimed to have been within the knowledge of the employer and not pertinent here.
Although the accident here involved occurred in February 19S9 the parties stipulated before the deputy that ch. 440, F.S. A. as amended July 1, 1959 would control this case.
On February 6, 1959 the claimant punctured his leg with a nail. The wound became infected. Both legs were affected. An operation was performed and he was apparently cured of an ulcerous and veinous condition of his legs. Other illnesses followed, resulting in a finding by the deputy that the claimant was permanently and totally disabled. However, the deputy determined that only 25% disability of each leg was attributable to the injury here involved, ordered the employer and carrier to compensate the claimant for such permanent partial disability and ordered the Special Disability Fund to reimburse the carrier therefor.
In directing the Fund to reimburse the carrier the deputy gave as his reasons (1) that the employer knew that claimant had diabetes when he was employed, which disease was permanent, (2) that such disease “constitutes ‘permanent physical impairment’ as defined by our statute”, and (3) that “all of the medical evidence reveals that but for the claimant’s pre-existing diabetic condition this rather minor puncture wound would have healed with no resulting residual disability whatsoever.”
In reversing this part of the deputy’s order the Full Commission, by a split decision, determined that the claimant’s preexisting diabetic condition was not a hindrance or obstacle to employment and therefore not such “permanent physical impairment”, as defined in Sec. 440.15(5) (d), par. 4, as would make the Fund responsible to reimburse the carrier for benefits paid by it to the claimant.
On this point the Full Commission said:
“There is absolutely no showing in the record that claimant’s diabetic condition, which existed for some 15 years prior to his accident on February 6, 1959, was a hindrance or obstacle to employment, nor that to cabinetmakers, generally, was diabetes mellitus a hindrance or obstacle to employment. It would appear that this factor, which is a necessary requisite for reimbursement to an employer by the Special Disability Fund, be present; and that such a finding by the Deputy Commissioner is not supported by the evidence. Accordingly, his Order should be modified by striking therefrom any reference to the Special Disability Fund’s reimbursing the employer and carrier for compensation paid to claimant.”
The proper interpretation to be given Sec. 440.15(5) (d), par. 4, F.S.A., is dispositive of this cause. This section of the statutes reads:
“Definition. As used in this paragraph, ‘permanent physical impairment’ means any permanent condition due to previous accident or disease or any congenital condition which is or is likely to he a hindrance or obstacle to employment and which was known to the employer prior to the occurrence of the subsequent injury or occupational disease.” (emphasis added)
In this case the claimant had a previous, or pre-existing, disease which was permanent and which was known to the employer prior to the occurrence of the compensable injury here involved. The only question then is whether the disease was one “which *307 is or is likely to be a hindrance or obstacle to employment.”
The deputy concluded that, although claimant’s diabetes did not render him incapable of performing his duties prior to the accident, his condition constituted a permanent physical impairment under the statute in that:
“ * * * When an employer knows that an applicant for employment has diabetes which requires daily treatment he is not as likely to hire such applicant as he would another applicant who is free from such disease. ‡ * *»
Thus, it seems clear that the deputy interpreted “permanent physical impairment” to be any diseased condition which would make an employer less likely to hire an employee even though the employee might be able to perform the employment as well as one not afflicted with the disease.
We note here that the above-quoted statement taken from the deputy’s order is not perhaps the strongest available ground for determining that diabetes is or is likely to constitute a hindrance or obstacle to employment. To the ground used by the deputy could well be added the fact that diabetes is a systemic vascular disease which makes those afflicted more subject to infection and may increase the extent and result of other injuries. To this may be added the fact that diabetes not properly controlled may affect the coordination and actions making an employee more subj ect to accidents.
The Full Commission seemed to hold the view that for the diseased condition to constitute “permanent physical impairment” it must be one which is disabling and must interfere with the employee’s performance of his work duties.
Before proceeding with discussion as to which interpretation of the law was correct, we must take note that the Fund in its brief and at oral argument contended that the deputy was not warranted in finding that claimant’s diabetic condition was responsible in any way for the permanent partial disability in his legs.
 We have considered this contention and conclude that the deputy did have before him competent substantial evidence, which accords with logic and reason, to support his finding that there was a causal relationship between the diabetes and the permanent partial disability of the claimant’s legs. We think this affords additional weight to the deputy’s conclusion that diabetes is a permanent physical impairment under the statutory definition for it indicates that the employer of a diabetic employee, on injury to the employee, may be required to compensate him for treatment or disability far greater than would be the case if the employee had not been afflicted with diabetes. This seems to make reasonable the classification of diabetes as a disease or condition which if known to the employer “is or is likely to be a hindrance or obstacle to employment.”
Quite obviously that which is or is likely to be a hindrance or obstacle to one employment would not be to another. Therefore, while in this case, where the employee was doing manual labor with attendant greater risk of physical injury, we think the deputy was correct in finding that diabetes was within the statutory definition of permanent physical impairment, such disease might not necessarily be determined to be such in another type employment.
No appellate court in this state has heretofore determined the construction to be placed on “permanent physical impairment” or determined what disease or condition “is or is likely to be a hindrance or obstacle to employment.” For the reason stated in the paragraph just above it is impossible to lay down any all-inclusive, inflexible yardstick to be followed in all cases. Nevertheless, the following statements may be helpful as a guide.
The legislative intent and the purpose to be accomplished by the Fund is set forth in Sec. 440.15(5) (d), par. 5, F.S.A. It is simply to encourage the employment of the *308 physically handicapped by protecting employers from excess liability for compensation for a permanent disability when an injury to an employee merges with his preexisting permanent physical impairment to cause a greater disability than would have resulted from the last injury standing alone.
We do not believe the term “physically handicapped” should be construed narrowly to mean only loss of or loss of full use of some member or movable segment of the body, but rather it should be construed to mean any disease or bodily infirmity which detracts from the general condition of health or well being.
If the benefits of the Fund are reserved only for those employers who hire employees whose pre-existing disabilities handicap them so as to actually interfere with the employees’ work capabilities or efficiency, as seems to be the view of the commission here, its use will fall far short of its intended purpose.
We think that any pre-existing disease or condition which is permanent, which is known to the employer, and which would reasonably magnify the extent or result of a subsequent injury leading to permanent disability and thereby increasing the responsibility of the employer under our Workmen’s Compensation Act, is a disease or condition which is or is likely to be a hindrance or obstacle to employment and within the statutory definition of “permanent physical impairment.”
While the disease or condition may be such that it interferes with the capability or efficiency of the employee in the subject employment it is not required to do so to deserve to be classified as a “permanent physical impairment.” It is enough if the pre-existing condition is such that when merged with a subsequent compensable injury it causes a greater disability than would have been caused by the subsequent injury alone.
Nor do we think that it is necessary that an employer be shown to have evaluated the increased responsibility assumed by him upon the hiring of an employee afflicted with such a disease or condition. It is not necessary that it be shown that the employer considered the disease or condition as a hindrance or obstacle yet nevertheless hired the employee. To require the employer to so act and such to be shown would in many instances defeat the purposes of the Fund.
We think it sufficient if it is shown that the employee had a pre-existing permanent disease or condition which had a potential for and did exaggerate the extent or result of a subsequent compensable injury and that the employer had prior knowledge thereof.
The parties agree that the statutory provisions of our Fund are based upon those in the State of New York and that the decisions of the courts of that state pertinent thereto have special significance in determining the question presented in this case.
We find corroboration for the holding that diabetes may be a “permanent physical impairment” in New York State Court decisions. Persky v. Stanley Persky Poultry Market, Inc., 1956, 2 A.D.2d 612, 151 N.Y.S.2d 737. See also Fields v. Rebowsky, 1953, 281 App.Div. 787, 118 N.Y.S.2d 671 (Paget’s disease); Ghirardi v. Mack Mfg. Corp., 1953, 282 App.Div. 905, 124 N.Y.S.2d 780 (high blood pressure); and Ferguson v. Art Stone Co., 1958, 6 A.D.2d 25, 174 N.Y.S.2d 375 (asthma).
In New York the test is not whether the impairment is one which would prevent the claimant from doing his work in a normal and acceptable manner. Rather, it is whether the impairment is one which is likely to be an adverse factor in the claimant’s being employed or being retained in employment. Nagorka v. Goldstein, 1957, 4 A.D.2d 904, 167 N.Y.S.2d 118. The court in that case, where the pre-existing impairment was the claimant’s being hard of hearing, said at 167 N.Y.S.2d at page 120:
“ * * * Many handicapped persons are, in fact, able to do their work as *309 well as those free from handicap hut there may be a greater risk of injury to them or there may be a risk that, in the event of injury, their total permanent disability will be greater than the disability which would have resulted from the subsequent injury alone. For these and related reasons, employers may be reluctant to employ such persons; the Second Injury Law was designed to overcome this reluctance. * * * »
The court then clearly indicated it was up to the board [deputy commissioner in this state] to make the determination of fact whether or not the physical impairment was •one which would likely be a hindrance to •employment.
In the instant case the deputy did make the determination of fact that diabetes was an impairment likely to be an obstacle to ■employment. His “finding” thereon was based on facts applicable to diabetes and to workmen in general, not on facts peculiar to claimant or to cabinetmakers. Nevertheless, it cannot be said such “finding” was baseless.
It is true that in Zyla v. A. D. Julliard & Co., 1951, 277 App.Div. 604, 102 N.Y.S.2d 255, a diabetes case, the decision that the second injury fund was not liable seemed to be based on a finding that although the employer knew the claimant had diabetes it did not have knowledge of the serious nature .thereof. The court therein ruled the employer must have made an “informed decision” to employ the handicapped worker in order to bind the second injury fund.
But in Dubrow v. 40 West 33rd Street Realty Corp., 1957, 4 A.D.2d 896, 167 N.Y.S.2d 98 and in Davis v. Concourse Gardens, 1957, 5 A.D.2d 729, 169 N.Y.S.2d 204, it was held that an employer need not have given any special consideration in assigning work to the claimant. It would seem to follow that he would not need to realize the serious nature of such impairment. In the employer had knowledge of the permanent physical impairment, that is, had concluded that the impairment or injury (the workman had a shortened left leg) was permanent.
For the reasons above expressed we determine that the deputy commissioner correctly interpreted Sec. 440.15(5) (d), par. 4, F.S.A. and that the Full Commission erred in its interpretation thereof. We further conclude that the deputy commissioner’s finding that the diabetic condition suffered by the claimant was a permanent physical impairment, as defined by the statute, was supported by competent substantial evidence which accords with logic and reason. Under the facts of this case the deputy commissioner was correct in ordering the Special Disability Fund to reimburse the employer-carrier for the benefits paid to the claimant in this case.
The petition for certiorari is granted and the order of the Full Commission is quashed with directions to reinstate the order of the deputy commissioner.
ROBERTS, C. J., and TERRELL, THOMAS and HOBSON, JJ„ concur.